# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*Vincent Payne*, individually

and as parent and guardian of Victoria Payne,

*and,*

*Victoria Payne*, a minor, by

and through her parent and natural

guardian, Vincent Payne

3142 N. Rosewood Street

Philadelphia, PA 19132

**PLAINTIFFS**

v.

*City of Philadelphia*

1101 Market Street, 15th Floor

Philadelphia, PA 19102; and

*City of Philadelphia Department of*

*Human Services* ("DHS"); **_and_** *Tiffany McLean*,

Social Worker for City of Philadelphia DHS;

**_and_** former Commissioner of DHS Ann Marie

Ambrose; **_and_** current Commissioner of DHS

Vanessa Garrett Harley; **_and_** DHS supervisor

Sandra Wiley

1515 Market Street

Philadelphia, PA 19102

**DEFENDANTS**

FILED

MAR 13 2015

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**CIVIL ACTION NO: 14-6508**

JURY DEMAND

1

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, Vincent Payne, individually and as parent and natural guardian of Victoria Payne, and Victoria Payne, a minor, bring this civil action against the above named Defendants, reserving their right to subsequently amend or add to the following allegations, in support thereof aver as follows:

## I. THE PARTIES

1. Plaintiff Vincent Payne is an adult and the father of minor Victoria Payne. He currently resides at 3142 North Rosewood Street, Philadelphia, PA 19132.

2. Plaintiff Victoria Payne is a minor and is the daughter of Vincent Payne. Though her legal residence is the same as Vincent Payne's, currently she resides somewhere else in foster care. At the time of the incidents alleged herein, Victoria was fourteen years old.

3. Defendant City of Philadelphia ("City") was at all relevant times a municipal corporation and political subdivision of the Commonwealth of Pennsylvania with offices located at 1101 Market Street, ninth floor, Philadelphia PA 19102.

4. Defendant Department of Human Services ("DHS") was at all relevant times an operating department of the City of Philadelphia providing services to children and families who reside in Philadelphia.

5. Defendant Tiffany McLean was the social worker responsible for placing Victoria Payne in DHS custody and in foster care and who refused to remove her from foster care once it was determined that the original justification for such placement was false and unsubstantiated. At all relevant times, McLean was an employee and/or agent of DHS and was acting in the scope of her employment/agency as a social worker for DHS.

6. Defendant Ann Marie Ambrose was the Commissioner of DHS at the time Victoria Payne was seized by DHS, and was responsible for the development, implementation, and enforcement of policies relative to reuniting children with their parents or familial custodial caregivers. At all relevant times as discussed herein, Ambrose was a "policy maker" for DHS.

7. Defendant Vanessa Garrett Harley was a Deputy Commissioner at DHS and replaced Defendant Ambrose as DHS Commissioner in August of 2014 and was and is still responsible for the development, implementation, and enforcement of policies relative to reuniting children with their parents or familial custodial caregivers. At all relevant times as discussed herein, Harley was a "policy maker" for DHS.

8. Defendant Sandra Wiley was at all relevant times a DHS supervisor who oversaw Defendant McLean's actions and who was responsible for ensuring the agency's compliance with DHS policies relative to reuniting children with their parents or familial custodial caregivers. At all times relevant herein, she approved of, acquiesced in, and directed McLean's actions.

9. Through discovery other DHS employees and/or agents will be discerned and will be joined as Defendants as warranted.

## II. JURISDICTION AND VENUE

10. The amount in controversy exceeds $75,000.00.

11. Jurisdiction over the causes of action in this Complaint lies against all Defendants, as they are government entities/actors and as such a federal question exists under 42 U.S.C. § 1983.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants regularly conduct business in the Eastern District of Pennsylvania and because the events giving rise to the claims raised herein occurred in the Eastern District of Pennsylvania.

## III. FACTS

13. On or about March 29, 2013, Plaintiff Vincent Payne lived with and was raising his daughter Victoria Payne at 3142 North Rosewood St, Philadelphia, PA 19132.

14. On that day, Philadelphia police officers were on patrol when they received a call that Vincent Payne had struck his daughter, Victoria Payne. The officers arrived at the Payne residence, barged in, arrested Vincent Payne and seized Victoria Payne. They then transported the child to the police district.

15. At the police district, Victoria Payne was held and questioned against her will by the police.

16. Though Victoria Payne suffered from no actual physical injuries, Vincent Payne was charged with unlawful restraint/serious bodily injury, endangering the welfare of a child, simple assault, and recklessly endangering the welfare of a child.

17. After being arrested, Vincent Payne was placed into the custody of the Philadelphia correctional system.

18. Victoria was then escorted to her uncle's home. Defendant DHS employees visited the home and performed a home assessment.

19. Victoria remained in her uncle's home until April 3, 2013, at which point Defendant DHS obtained an Order of Protective Custody.

20. On April 5, 2013, the Order of Protective Custody was lifted and a temporary commitment order to DHS was held in place, causing Victoria Payne to be further held against her will in the custody of DHS.

21. On April 8, 2013, Defendant McLean sent a letter to Vincent Payne explaining that the allegations of child abuse lodged against him were unfounded.

22. By this time, Defendants Ambrose and Harley had failed to implement and enforce any policies with respect to reunifying children with their familial custodial caregivers after triggering allegations, such as those against Vincent Payne, had been deemed unfounded.

23. This failure was caused by DHS' customs, practices, and policies of refusing to reunify familial custodial caregivers with children in favor of keeping said children entrapped in the morass of DHS bureaucracy- a practice which guarantees DHS' receipt of astronomical sums of funding from the local, state, and federal governments.

24. Thus, as a result of Defendants' Ambrose, Harley, and DHS' failure to implement and enforce any policies that ensured the reunification of children with their familial custodial caregivers, on the very same day that Payne was cleared of the allegations against him, Defendant McLean nonetheless instituted legal proceedings in Family Court seeking to have Victoria Payne placed under the supervision of DHS. McLean's actions were approved of, acquiesced to, and directed by her supervisor, Defendant Wiley.

25. Then, on April 12, 2013, McLean and DHS proceeded to a hearing in Family Court to determine whether Victoria should be placed under DHS supervision.

26. By this point, Defendants Ambrose, Harley, and DHS were required by Pennsylvania law to provide notice of this hearing to Vincent Payne and to otherwise secure his attendance in light of his incarceration. Nevertheless, Defendants' Ambrose, Harley and DHS did not implement or enforce any necessary policies that would have ensured compliance with Pennsylvania law.

27. As such, no notice of the April 12, 2013 hearing was provided to Vincent Payne, nor were any arrangements made to secure his presence at the hearing.

28. After said hearing at which Vincent Payne was not permitted to participate, Victoria Payne was placed in foster care.

29. Three weeks later, on May 2, 2013, the criminal charges against Vincent Payne were dismissed for lack of evidence and he was released from custody.

30. Nevertheless, despite the fact that DHS and McLean rendered the underlying allegation of child abuse against Vincent Payne "unfounded," and despite the fact that Mr. Payne's criminal charges were dismissed and he has been released and is thus fully capable of caring for his child, DHS, Ambrose, Harley, Wiley and McLean have kept Victoria Payne in custodial foster care against her and Vincent Payne's will for the last twenty-four (24) months, as a direct result of Defendants Ambrose and Harley's failures to implement and enforce any policies designed to reunify children with their parents or familial custodial caregivers.

31. Victoria remains in foster care to this day against her wishes and subject to deplorable living conditions, despite Vincent Payne's repeated requests for her to be returned to his care and custody.

32. DHS routinely refuses to reunite children with their parents or other familial caregivers in favor of trapping said children in the morass of

DHS bureaucracy. This system allows DHS to justify increasing budgets and budget requests from the local, state and federal governments. The City of Philadelphia is aware of and endorses this policy.

33. That DHS, Ambrose and Harley have systematically and routinely failed to implement, adopt, or enforce any policies that were designed to reunify children with their parents or familial custodial caregivers is evinced by the following examples, which will be supplemented and added to through the course of discovery:

   a. <u>Lawanda Connelly:</u> In or around 2010, Ms. Connelly's daughter was taken from her by DHS without any legitimate cause. After spending two years in legal proceedings caused by DHS' actions, during which she repeatedly detailed DHS' wrongful seizure of her child, as well as her own fitness and ability to care for her child, a trial court ordered that Ms. Connelly's daughter be returned to her care and custody. Further details of her case, as well as others, can be found at this publicly available documentary, the details of which are incorporated as if set fully herein: https://vimeo.com/22426755.

b. <u>Sparkle Ballard</u>: Ms. Ballard had her one year old daughter removed from her care in 2010 because she did not have permanent housing. Despite finding permanent housing and seeking to complete her GED, as well as jumping through various other hoops imposed by the agency, DHS refused to reunify Ms. Ballard with her daughter. The failure to reunify this family was consistent with DHS policies, practices, and customs that favor placement of children into the DHS bureaucracy in order to justify its budget instead of reunifying children with parents or familial caregivers. This case was publicly exposed at <u>http://articles.philly.com/2010-02-22/news/24956741_1_parents-richard-wexler-children-in-permanent-homes</u>.

c. <u>Carolyn Hill</u>: Ms. Hill had her nieces, aged one and two, placed with her by DHS after the children's mother was deemed unfit due to mental health issues. Ms. Hill was in the process of formally adopting the children, when, in April 2012, DHS initiated a unilateral seizure of the children and placed them in foster care. DHS claimed that Hill was poor and had no GED, though its excuses for failing to reunify these children with

their aunt has shifted over the years. This case is currently
pending on appeal to the Pennsylvania Superior Court, and
press coverage, which is incorporated as if fully set forth herein
can be found at:
http://inthesetimes.com/working/entry/16965/the_right_to_pare
nt. In Ms. Hill's case, DHS has again been publicly exposed as
maintaining policies, practices, and customs that favor
placement of children into the DHS bureaucracy in order to
justify its budget instead of reunifying children with parents or
familial caregivers.

d. <u>Janice Brown:</u> In February 2014, the Philadelphia Daily news
detailed another instance of DHS' policies, customs, and
practices of refusal to reunify children with parents or familial
custodial caregivers. The article, which is incorporated by
reference as if fully set forth herein, is at
http://articles.philly.com/2014-02-07/news/47093644_1_dhs-
zyeem-rimanee. Janice Brown's grandchildren were
unilaterally removed from her care in 2010 by DHS for no
apparent reason. Ms. Brown has sought reunification with
these children for four years, but DHS, consistent with its

11

policies, practices, and customs of refusing to reunify families,

has refused to reunify Ms. Brown with her grandchildren.

Incredibly, DHS had subsequently asked Ms. Brown to care for

three other children as a foster parent, which further supports

the conclusion that DHS' policies, practices and customs

unlawfully favor the seizure of children from their families and

placement into the DHS system so as to justify its own budget.

34. The foregoing examples are public knowledge and thus were known

by the policy makers at DHS, including Ambrose and Harley.

## COUNT I

### Plaintiffs v. Defendants McLean, Wiley, Ambrose, and Harley
### 42 U.S.C. § 1983

35. Plaintiffs incorporate all previous paragraphs as if more fully set forth

here.

36. At all relevant times, Defendants McLean, Wiley, Ambrose and

Harley were "persons" acting under color of state law under 42 U.S.C.

1983.

37. By failing to return Victoria Payne to the care and custody of her

father Vincent Payne after the triggering allegations were rendered

unfounded, Defendants McLean and Wiley unlawfully and with

deliberate, and/or intentional and/or willful and/or unreasonable and/or malicious and/or reckless indifference violated and continue to violate Plaintiffs' rights to substantive due process guaranteed by the Fourteenth Amendment to the U.S. Constitution, similar provisions of the Pennsylvania constitution, federal and state law, without lawful basis, thereby causing injuries and damages to be suffered by Plaintiffs.

38. By failing to have, enforce or follow the necessary policies and procedures for reuniting children with wrongfully accused custodial parents, Defendants Ambrose, Harley, and Wiley unlawfully and with deliberate, and/or intentional and/or willful and/or unreasonable and/or malicious and/or reckless indifference violated and continue to violate Plaintiffs' rights to substantive due process guaranteed by the Fourteenth Amendment to the U.S. Constitution, similar provisions of the Pennsylvania constitution, federal and state law, without lawful basis, thereby causing injuries and damages to be suffered by Plaintiffs.

39. By initiating a dependency hearing without providing notice to Plaintiff Vincent Payne and/or ensuring his presence at the hearing on April 12, 2013, and by refusing to ensure the return of Victoria to her

father Vincent Payne, Defendants McLean and Wiley unlawfully and
with deliberate, and/or intentional and/or willful and/or unreasonable
and/or malicious and/or reckless indifference violated Plaintiffs'
rights to procedural due process guaranteed by the Fourteenth
Amendment to the U.S. Constitution, similar provisions of the
Pennsylvania constitution, federal and state law, without lawful basis,
thereby causing injuries and damages to be suffered by Plaintiffs.

40. By failing to have, enforce or follow the necessary policies and
procedures for providing fair notice to custodial parents of custody
hearings in Family Court, and by failing to have, enforce or follow the
necessary policies and procedures for securing the presence of
incarcerated parents at such hearings, Defendants Ambrose, Harley,
and Wiley unlawfully and with deliberate, and/or intentional and/or
willful and/or unreasonable and/or malicious and/or reckless
indifference violated Plaintiffs' rights to procedural due process
guaranteed by the Fourteenth Amendment to the U.S. Constitution,
similar provisions of the Pennsylvania constitution, federal and state
law, without lawful basis, thereby causing injuries and damages to be
suffered by Plaintiffs.

41. Wherefore, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of $75,000.00 including attorney's fees under 42 U.S.C. § 1988 and punitive damages, pre- and post-judgment interest, delay damages, and such other monetary relief as this Court deems appropriate.

## COUNT II
**Plaintiffs v. Defendants City of Philadelphia and DHS**
**42 U.S.C. §1983/ *Monell***

42. Plaintiffs incorporate all previous paragraphs as if more fully set forth here.

43. At all relevant times, Defendant City of Philadelphia was a "person" acting under color of state law under 42 U.S.C. § 1983.

44. At all relevant times, DHS was a "person" acting under color of state law under 42 U.S.C. § 1983.

45. Between April 2013 and August 2014, Defendant Ambrose, as Commissioner of DHS, was required to develop, implement, and enforce policies and customs that would protect the constitutional rights of custodial parents by ensuring reunification in situations, like here, where triggering allegations against those parents are deemed unfounded.

46. Between April 2013 and August 2014, as Deputy Commissioner of DHS, Defendant Harley had the same responsibility as Defendant Ambrose.

47. Between April 2013 and the present, Defendant Wiley was responsible for implementing and enforcing DHS policies and customs that would protect the constitutional rights of custodial parents by ensuring reunification in situations, like here, where triggering allegations against those parents are deemed unfounded.

48. From August 2014 to the present, Defendant Harley was and is required to develop, implement and enforce policies that ensure reunification of children with their wrongfully accused parents.

49. From April 2013 to the present, neither Defendant Ambrose nor Harley developed, implemented, or enforced any policies that would ensure the reunification of children with wrongfully accused custodial parents, as required by substantive due process guaranteed under federal and state law.

50. This failure was a direct result of said Defendants' failure to implement, develop or enforce policies, practices and procedures that would ensure reunification of children with parents and other familial custodial caregivers. These failures were caused by the City of

Philadelphia and DHS' strategic policy of seizing and trapping as many children in the DHS bureaucracy as possible in order to justify DHS' budget. That the City of Philadelphia and DHS were on notice of these failures is outlined *infra* at paragraph 33.

51. During the same timeframe, Defendant Wiley, a DHS supervisor responsible for Plaintiffs' case, failed to implement and enforce the same policies that were required to ensure the reunification of children with their parents.

52. As demonstrated *infra* at paragraph 33, DHS was on notice as early as 2010 that it routinely and systematically either:

   a. Failed to follow, implement, or enforce its own policies, customs and procedures that were designed to ensure reunification of children with their parents or other familial custodial caregivers; or,

   b. Lacked the necessary policies, customs and procedures required to ensure reunification of children with their parents or other familial custodial caregivers.

53. As a consequence, at all relevant times, Defendants City of Philadelphia and DHS acted in accord with:

a. Their policies, customs, practices, and procedures of refusing to reunite custodial parents with their children after triggering allegations are deemed unfounded; or alternatively,

b. Their failure to have adequate policies, customs, practices, and procedures in place to reunite custodial parents with their children after triggering allegations are deemed unfounded; or alternatively,

c. Their failure to follow and enforce their own policies, customs, practices, and procedures meant to ensure the reunification of parents with their children after a triggering allegation is deemed unfounded.

54. As a consequence of their actions outlined above, Defendants City of Philadelphia and DHS violated and continue to violate Plaintiffs' substantive due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution, similar provisions of the Pennsylvania constitution, federal and state law, without lawful basis, thereby causing injuries and damages to be suffered by Plaintiffs.

55. In April 2013, Defendant Ambrose was required to develop, implement, and enforce policies that ensured that notice of custody hearings was provided to custodial parents such as Vincent Payne, and

to ensure incarcerated parents' (such as Vincent Payne) presence or participation in such hearings.

56. In April 2013, as a DHS supervisor, Defendant Wiley was required to implement and enforce policies that ensured that notice of custody hearings was provided to custodial parents such as Vincent Payne, and to ensure incarcerated parents' (such as Vincent Payne) presence or participation in such hearings.

57. In April 2013, Defendant Ambrose did not develop, implement, or enforce any policies that would ensure that notice of custody hearings was provided to custodial parents such as Vincent Payne, and to ensure incarcerated parents' (such as Vincent Payne) presence or participation in such hearings. During the same timeframe, Defendant Wiley failed to implement or enforce the same policies.

58. Defendants routinely failed to ensure the presence or participation of incarcerated parents at such dependency hearings, and did so in accord with its knowledge that said failures routinely resulted in the violation of incarcerated parents' rights to procedural due process.

59. Consequently, at all relevant times herein, Defendants City of Philadelphia and DHS acted in accord with:

a. Their policies, customs, practices, and procedures of refusing to adequately provide notice to parents of children subject to imminent dependency proceedings and to ensure said parents' presence at the proceedings; or alternatively,

b. Their failure to have adequate policies, customs, practices, and procedures in place to provide adequate notice to parents of children subject to imminent dependency proceedings and to ensure said parents' presence at the proceedings; or alternatively,

c. Their failure to follow and enforce their own policies, customs, practices, and procedures meant to ensure that adequate notice to parents of children subject to imminent dependency proceedings and to ensure said parents' presence at the proceedings.

60. As a consequence of their actions outlined above, Defendants City of Philadelphia and DHS violated Plaintiffs' procedural due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution, similar provisions of the Pennsylvania constitution, federal and state law, without lawful basis, thereby causing injuries and damages to be suffered by Plaintiffs.

61. Wherefore, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of $75,000.00 including attorney's fees under 42 U.S.C. § 1988 and punitive damages, pre- and post-judgment interest, delay damages, and such other monetary relief as this Court deems appropriate.

**WHEREFORE,** Plaintiffs demand judgment in their favor against all Defendants, jointly and severally, for compensatory damages in excess of $75,000.00 including attorney's fees under 42 U.S.C. § 1988 and punitive damages, pre- and post-judgment interest, delay damages, and such other monetary relief as this Court deems appropriate.

Respectfully submitted,

**The Law Office of Todd Mosser, PLLC**

**BY:**

Todd M. Mosser
Attorney ID: 87534
1500 JFK Boulevard, Suite 1723
Philadelphia, PA 19102
215-567-1220
todd@mosserlegal.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the

foregoing document was served this day on all Defendants via electronic service to

their counsel of record via the e-filing system.

Todd M. Mosser, Esquire

Date: 3 | 11 | 2015