**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VINCENT PAYNE, et al.,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 14-6508** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM ORDER**</u>

This 4th day of April, 2016, upon review of Defendants' Motion for Summary Judgment, it is hereby **ORDERED** that the Motion is **GRANTED** for the reasons that follow.

**I.    Background**

Plaintiffs' allegations arise from the removal of the minor Plaintiff ("V.P.") from the home of her father, Plaintiff Vincent Payne.  On March 29, 2013, police responded to a call from tenants staying in Plaintiffs' home, and Mr. Payne was arrested for allegedly assaulting and endangering his daughter.  V.P. Dep. at 5–6.  V.P., who was 13 years old, told police at the time of her father's arrest that her father was high and had punched her.  Investigation Interview Record, Ex. 1 to V.P. Dep. at 1.[1]

Defendant Tiffany McClean, a Philadelphia Department of Human Services ("DHS") social worker, was assigned to investigate the allegations.  While Mr. Payne was incarcerated on those charges, V.P. initially moved in with her aunt and uncle; however, after a few days they decided they could no longer care for her and dropped her off at DHS.  McClean Dep. at 15.  McClean then applied for and was granted a temporary Order of Protective Custody to place V.P. in foster care because no other family members known to DHS were available to care for

---

[1] Both Plaintiffs have since testified that no physical altercation occurred on this date.  *See* V.P. Payne Dep. at 8; Vincent Payne Dep. at 6.

her.[2]  *Id.* at 16; Order of Protective Custody.  On April 5, 2014 a shelter care hearing was held in

the Family Court of the First Judicial District of Pennsylvania.  Mr. Payne did not attend because

he was still incarcerated, but the court appointed counsel to represent him.  The Family Court

accepted McClean's recommendation and ordered that legal custody of V.P. would remain with

DHS.  April 5, 2013 Hr'g Tr.

McClean investigated the accusations against Mr. Payne and determined that while Mr.

Payne engaged in inappropriate discipline by hitting V.P., she did not believe his actions had

constituted child abuse.  McClean Dep. at 21–22.  On April 8, 2013, McClean sent a letter to Mr.

Payne notifying him that she had marked the report of suspected child abuse as unfounded.  *Id.*

at 27.  On the same day, McClean also filed a dependency petition.  Dependency Pet., Ex. 3 to

McClean Aff.  The Statement of Facts in support of the petition included allegations that "DHS

learned V.P. was assaulted by her father"; "V.P. alleged that Vincent Payne used drugs"; and

V.P. "appears withdrawn."  *Id.* at 8–9.  The petition includes an affidavit of service stating that a

---

[2] Some background on the vocabulary of Pennsylvania family law is helpful:

> The applicable state-laws governing dependency proceedings are the Child Protective Services Law, 23 Pa.C.S.A. §§ 6301–6386, and the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6375.
>
> Under 23 Pa.C.S.A. § 6315(a), a child may be taken into "protective custody" pursuant to a court order issued according to 42 Pa.C.S.A. § 6324. "Protective custody" is a temporary solution for a child at risk of abuse.  42 Pa.C.S.A. § 6324(1).  Additionally, 23 Pa.C.S.A. § 6315 provides that upon obtaining an order for protective custody, an informal hearing must be held within 72 hours to determine whether to continue protective custody.  *See also* 42 Pa.C.S.A. § 6332.
>
> If at this informal hearing it is determined that protective custody should be continued, then [the child welfare agency] has 48 hours to file a petition with the court alleging that the child is a dependent child, which is a more long-term solution and requires hearings to determine whether the child is a "dependent child."  23 Pa.C.S.A. § 6315(d).

*Dennis v. DeJong*, 953 F. Supp. 2d 568, 592–93 (E.D. Pa. 2013) *aff'd,* 557 F. App'x 112 (3d Cir. 2014).  A "dependent child," in relevant part, is defined as one who:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

copy of the petition, including the date and time for an adjudicatory hearing, was served on Mr. Payne while he remained incarcerated. *Id.* at 7.

On April 12, 2013, the hearing was held, at which Mr. Payne was again represented by counsel in his absence. April 12, 2013 Hr'g Tr. at 2. V.P. was adjudicated dependent on the basis of her father's present inability to adequately care for her. Ex. I. at 7. McClean had no further involvement with V.P.'s case after this date, as the case was transferred to another social worker. McClean Dep. at 33.

Mr. Payne was later released from jail on April 18, 2013, and the charges against him were dismissed on May 2, 2013. Vincent Payne Dep. at 10. The Family Court held an Initial Permanency Review Hearing on July 18, 2013. Mr. Payne was present and represented by counsel at this hearing. July 18, 2013 Hr'g Tr. at 3. The Family Court accepted DHS's recommendation that V.P. remain in DHS custody, that she be permitted visits with Mr. Payne at her discretion, and that Mr. Payne be ordered to undergo drug and alcohol testing. *Id.* at 6–8. Numerous Permanency Review Hearings have taken place since that time, but counsel and social workers speaking on behalf of DHS continue to recommend that V.P. remain in DHS custody, in part because Mr. Payne has tested positive for drug use and failed to complete parenting classes to which he was referred.

Plaintiffs filed the instant Second Amended Complaint ("SAC") on March 13, 2015, seeking compensatory and punitive damages for violations of procedural and substantive due process rights resulting from these events, and Defendants move for summary judgment on all claims.[3]

---

[3] After Defendants filed their Motion, this case was dismissed pursuant to the agreement of the parties on October 5, 2015 (Doc. 31). On October 29, 2015, Mr. Payne filed a *pro se* motion asserting that he did not consent to the dismissal and asked the Court to re-open the case (Doc. 32). The Court granted Plaintiffs the requested relief, allowed Plaintiffs' former counsel to withdraw, and provided Mr. Payne 90 days within which to seek new counsel

## II.     Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A motion for summary judgment may not be granted simply on the basis that the non-movant files no response in opposition.  *See* Local Rule 7.1(c) ("In the absence of timely response, the motion may be granted as uncontested *except* as provided under Fed.R.Civ.P. 56.") (emphasis added); Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements.").  However, if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).  In addition, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## III.     Substantive Due Process Claim

The Complaint alleges that the City of Philadelphia and DHS have created and maintained an unconstitutional policy of preventing reunification of children with parents—even after triggering allegations of abuse are determined to be unfounded—in order to strategically inflate the DHS budget.  Compl. at ¶ 50.  Plaintiffs further allege that liability should extend to

---

and respond to the Motion for Summary Judgment (Doc. 34).  Mr. Payne has filed several motions seeking extensions of that deadline, one of which was granted and extended the deadline until March 18, 2016 (Doc. 39).  Mr. Payne has filed two documents since that deadline, but they largely contain accusations against Donnia Todd, staff members at Carson Valley, and his former attorney, which are outside of the scope of the Complaint (Docs. 46 and 47).  To the extent that those communications move to impose sanctions against Plaintiffs' former attorney, the Court finds no fault in Mr. Mosser's conduct, and sanctions will not be imposed.

all named parties because McClean violated Plaintiffs' substantive due process rights by implementing these policies; Wiley, as a supervisor, was responsible for ensuring the implementation of these DHS policies; and Ambrose and Harley were policymakers responsible for developing these reunification policies.  Compl. at ¶¶ 37, 45–49.

### A.  Defendant McClean

The record shows that, once McClean found the triggering child abuse allegations against Mr. Payne to be unfounded,[4] her actions were limited to submitting a Dependency Petition to the Family Court and defending the related recommendations at the April 12, 2013 hearing.  Child welfare workers are "entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings."  *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 495 (3d Cir. 1997).  This immunity extends to the "gathering and evaluation of information and professional opinions regarding the relationship between [the parent and child] in preparation for the dependency proceedings," as well as "the formulation and presentation of recommendations to the court in the course of such proceedings."  *Id.* at 495, 498.  Absolute immunity "defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."  *Imbler v. Pachtman,* 424 U.S. 409, 419 n.13 (1976).  There is no genuine dispute that all of McClean's relevant actions fall within the scope of this immunity, so she is entitled to summary judgment on this claim.

### B.  Defendants Wiley, Ambrose, and Harley

Furthermore, the record contains no evidence that Defendants Wiley, Ambrose, and Harley personally engaged in any actions that led to a violation of constitutional rights.  First,

---

[4] The Complaint does not allege that McClean committed any errors in her investigation of the child abuse allegations against Mr. Payne prior to her submissions to the Family Court.  Since this investigation resulted in a finding that the allegations were unfounded, Plaintiffs appear to argue that this part of the investigation was done correctly, and use the finding that no physical abuse occurred as the basis for accusing McClean of error in her subsequent actions.

"[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*"  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  The Court acknowledges that "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm.' "  *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989)).  A supervisor may also be held personally liable under § 1983 if she participated in violating Plaintiffs' rights, directed others to violate them, or had knowledge of and acquiesced in her subordinates' violations.  *Id.* (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)).  There is, however, no evidence in the record that would allow a reasonable jury to conclude that the named individual defendants had the responsibilities or powers with which Plaintiffs credit them, that they established or implemented any particular policies or customs, or that they were aware that particular consequences would result from their actions.  The Complaint describes a string of instances in which DHS has unjustly failed to reunify other parents and children, but none of these examples are substantiated in the record.  "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also* Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment ("The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").

6

Moreover, the record does not support a finding that a constitutional violation occurred in this instance. Substantive due process rights are only violated if conduct by officials "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 116 (1992). Liability for a substantive due process violation may attach when a social worker acts with gross negligence to separate parent and child without any objectively valid grounds for doing so. *Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999).

It is troubling that even after the triggering abuse allegation was determined to be unfounded, this change in circumstance was not included in the dependency petition, nor was that information brought to the Family Court's attention during the April 12 hearing. Nonetheless, the record before me includes evidence that V.P. told officials she was afraid of her father, that he hit her when he was high, and that he lacked adequate housing. This demonstrates that the DHS officers involved acted well within the bounds of reason by recommending continued DHS placement and requesting that the Family Court order drug testing and parenting classes, even after the triggering assault allegation was determined to be unfounded. The Complaint ignores the fact that an unfounded child abuse allegation may nonetheless prompt an investigation that reveals a "lack of proper parental care or control … that places the health, safety or welfare of the child at risk," justifying a dependency recommendation. 42 Pa.C.S.A. § 6302. Furthermore, to the extent that Plaintiffs seek to use this federal action to present an indirect attack on the Family Court's decision to follow those recommendations and continue V.P.'s placement in DHS custody, the *Rooker-Feldman* doctrine bars this Court from reviewing the Family Court's decision. *See Marran v. Marran*, 376 F.3d 143, 153 (3d Cir. 2004) (citing

*Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)).

   C. *Defendants DHS and the City of Philadelphia*

   Because of the failure to demonstrate sufficient evidence of an underlying constitutional violation in this case, the *Monell* claim against the City of Philadelphia and DHS must also fail. *See Monell v. Dep't Soc. Servs.*, 436 U.S. 658 (1978) (stating that a litigant may only bring a municipal liability claim under § 1983 if a municipal policy or custom caused an underlying constitutional violation); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

## IV.   Procedural Due Process

   The Complaint also alleges that Defendants violated Plaintiffs' procedural due process rights by failing to ensure the presence or participation of Mr. Payne at the April 12, 2013 dependency hearing which took place while he was incarcerated.  Compl. at ¶¶ 39-40, 58.  To state a Section 1983 claim for deprivation of procedural due process, Mr. Payne must demonstrate that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law.  *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000).  First, parents have a recognized liberty interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).[5]  Second, due process requires an opportunity for the parent to be heard at a meaningful time and in a meaningful manner after a child is removed from his home.  *B.S. v. Somerset Cty.*, 704 F.3d 250, 271 (3d Cir. 2013) (citing *Mathews v.*

---

[5] Defendants point out that it is undisputed that V.P. received notice and was present at the hearing.  The parties have cited no authority regarding whether a child has a liberty interest in having a parent present at such a hearing, and Pennsylvania's Child Protective Service Law specifically denies that such a right exists.  *See* 42 Pa.C.S. § 6310(e) ("Nothing in this section shall be construed to create a right of a child to have his parent, guardian or custodian present at a proceeding under this chapter or participate in a court-ordered program.").  I interpret this claim to be limited to a violation of Mr. Payne's procedural due process rights and apply the *Mathews* factors accordingly.

*Eldridge,* 424 U.S. 319, 333 (1976)).  To determine the extent of procedures required when the state seeks to alter or suspend a parent's right to custody of a minor child, the Third Circuit applies the *Matthews v. Eldrige* balancing test, which considers the following factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such an interest through the procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*B.S. v. Somerset Cty.,* 704 F.3d at 271 (citing *Mathews v. Eldridge,* 424 U.S. at 333).

In this case, the record shows that Mr. Payne was provided notice of the April 2013 shelter care and dependency hearings, and he was represented by counsel at each hearing.  He contends, however, that for the hearings to be meaningful, he should have been transported from jail to be present at each hearing.

First, while a parent's interest in his child's custody is great, "[t]his interest … must be balanced against the state's interest in protecting children suspected of being abused."  *Miller v. Philadelphia*, 174 F.3d at 373.  In addition, a dependency proceeding is an interim action that does not result in the termination of parental rights, and there is dispute regarding whether physical presence is even required at a proceeding to terminate that parent's rights.  *See* Philip M. Genty, *Procedural Due Process Rights of Incarcerated Parents in Termination of Parental Rights Proceedings: A Fifty State Analysis*, 30 J. FAM. L. 757, 774 (1992).  Second, in this particular instance, Mr. Payne's presence at the hearings could not have affected the outcome; he would have remained incarcerated, and his daughter would have still been without an adult to care for her.  While Mr. Payne was not physically present at the hearing, he was notified in advance and represented by counsel.  These are considerable safeguards.   Finally, the right and need of DHS to act expeditiously when a minor's only parent is incarcerated is self-evident.

9

Adding the additional administrative burden of securing the presence of every incarcerated parent prior to a dependency hearing would create a significant impediment to this goal.  *See Miller v. Philadelphia*, 174 F.3d at 374 (holding that parents do not have a constitutional right to be present at emergency pre-deprivation hearings "when available" because such a requirement "would build delay into these time-sensitive hearings .... [and] would thus inhibit, deter and, at times, subvert the crucial function of ex parte custody hearings protecting children who are in imminent danger of harm.").  Timing aside, the cost and administrative burden of recognizing such a right would be overwhelming.

**V.    Conclusion**

The Court is aware that Mr. Payne strongly desires to be reunited with his daughter, but lacks jurisdiction to relitigate the state court's determination of his daughter's dependency.  Nor do I have either the power or the resources to determine what is in the best interests of the child. In addition, while the instant suit seeks compensatory damages for constitutional violations, it does not even request the injunctive relief that would be necessary to provide Mr. Payne with the remedy he seeks.  I must decide the Motion on the basis of the pleadings and the record before me, and I conclude that Defendants are entitled to summary judgment on all claims.

          /s/ Gerald Austin McHugh
United States District Court Judge

10